CHESTER UPLAND SCHOOL
DISTRICT

v.

EDWARD J. MELONEY, INC. and Tri State HVAC Equipment, d/b/a Tri State HVAC Equipment, LLP and Tri State McQuay Service and McQuay International and Snyder General Corp. t/a McQuay, McQuay Snyder General, McQuay Snyder General Sanyo and Thermal Products Company and CNA Surety and American Casualty Company and Gillan & Hartmann, Inc.

Appeal of: Gillan & Hartmann, Inc.

Superior Court of Pennsylvania.

Argued March 21, 2006.
Filed June 15, 2006.

Patrick W. Liddle, Downingtown, for Gillan & Hartmann, appellant.

Lucy H. Halatyn, Philadelphia, for Meloney, appellee.

Stephen J. DeFeo, Westmont, New Jersey, for TriState McQuay, McQuay International, TriState HVAC, Snyder General appellees.

BEFORE: TODD, BENDER and GANTMAN, JJ.

OPINION BY BENDER, J.:

¶ 1 Gillan & Hartmann, Inc. (Architect) appeals from the order denying its motion for summary judgment and granting Edward J. Meloney, Inc.'s (Contractor) cross-motion for summary judgment on Architect's claim for indemnification for costs and attorney's fees incurred in defending itself in a lawsuit against it and Contractor brought by the Chester Upland School District (School District). For the following reasons, we affirm.

¶ 2 The facts of this case are as follows. The School District contracted with various parties, among them Contractor and Architect, for the purchase and installation of a new chiller and cooling tower for the HVAC system at the Chester High School. There are numerous documents that constitute the agreement between the various parties; however, for purposes of our decision here we are concerned with the following: (1) the Contract between Contractor and School District (Reproduced Record (R.) at 28a); (2) the Specifications drafted by Architect and incorporated into the Contract (Brief for Appellee Contractor, Appendix A); (3) the General Conditions drafted by Architect and made applicable pursuant to the Specifications (R. at 125a); (4) the Supplementary General Conditions drafted by Architect and made applicable pursuant to the Specifications (R. at 156a); and (5) the Special Conditions drafted by Architect and made part of the "Contract Documents" pursuant to the Supplementary General Conditions (R. at 174a).[1]

¶ 3 Pursuant to the Specifications, Contractor was to use an absorption chiller that met Architect's specific requirements, which included, *inter alia,* certain capacities, electrical requirements, the type of generator and condenser, and the type of refrigerant to be used. Specifications, ¶¶ 2.2–2.7. The Specifications listed only one available manufacturer (McQuay, Snyder General (McQuay)) from whom Contractor could purchase an absorption chiller meeting the very detailed requirements, and Contractor chose to use the absorption chiller manufactured by McQuay. Specifications, ¶ 2.1.[2]

¶ 4 Sometime in January or February of 1997, the installation of the McQuay chiller was completed. In April of 1997, the parties attempted to start the chiller, but for several reasons, the attempt failed. As of April of 1998, the chiller still did not function properly, and in June of 1998, Con-

---

1. In its brief, Contractor repeatedly alleges that Architect drafted the documents that we referenced. And in its brief, Architect admits that it administered the contract pursuant to Article Four of the Specifications. At no point does Architect deny that it drafted the Specifications, the General Conditions, the Supplementary General Conditions, or the Special Conditions.

2. However, the Specifications did not prohibit Contractor from finding an alternative manufacturer of an absorption chiller that would meet the Specifications' requirements.

tractor, McQuay and Tri–State HVAC Equipment (Tri–State) attempted to fix the chiller by cutting the top off in order to re-align trays that were allegedly improperly installed by McQuay. However, the alterations were to no avail, and the chiller continued to malfunction.

¶ 5 In September of 2000, School District declared Contractor in default on the Contract, and the instant action ensued on May 18, 2001. On September 10, 2001, School District filed the Complaint containing nine counts. Pertinent to the instant appeal are counts eight and nine against Architect for breach of contract and negligence, respectively. (R. at 19a–21a.) Architect then filed a cross-claim against Contractor for indemnification. The case proceeded to a bench trial before the Honorable James F. Proud, however; during the trial, the parties settled the action and all that remained was Architect's claim for indemnification against Contractor.[3] Ultimately, the court granted Contractor's cross-motion for summary judgment, and Architect then filed this appeal raising the following two questions for our review:

A. Whether a party to be indemnified pursuant to a contractual provision providing indemnification against suits and claims must pay a claim for damages before obtaining the right to indemnification.

B. Whether a party to be indemnified pursuant to a contractual provision providing indemnification against suits and claims is entitled to recover its legal fees and expenses and its legal fees and its

expenses paid by its insurer, together with internal costs of defense.

Brief for Appellant at 4.

¶ 6 In an appeal arising from a trial court's ruling upon motions for summary judgment, our scope and standard of review are well settled.

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Atlantic States Ins. Co. v. Northeast Networking Systems. Inc.,* 893 A.2d 741, 745 (Pa.Super.2006) (citations omitted).

¶ 7 The central issue in this appeal is whether Architect has a right of indemnification against Contractor for costs and attorney's fees incurred by Architect in defending itself against claims for its own negligence and breach of contract in the underlying action brought by the School District. In the subsequent analysis we identify various indemnification clauses contained in the Contract, the General Conditions, the Supplementary General Conditions, and the Special Conditions.

---

**3.** Pursuant to the settlement agreement, McQuay provided a replacement chiller of a different type, removed and disposed of the old chiller, and warranted the new chiller. Furthermore, the School District and McQuay agreed to pay the Contractor the balance of $38,000 remaining due on the Contract with

the School District. In its opinion, the trial court states that pursuant to the settlement agreement, Contractor and Architect "were summarily released from the suit because they were not at fault for the damages sustained by the school district." Trial Court Opinion (T.C.O.), 8/10/05, at 2.

Some of these clauses conflict with one another, and for the reasons that follow, we conclude that the indemnification clause relied upon by Architect does not apply. Our discussion necessarily departs from addressing the questions presented by Architect, as its arguments are founded upon the presumption that a particular indemnification clause applies. Nonetheless, our analysis, which concludes that the applicable indemnification clause bars Architect's claims, is dispositive of the issues presented by Architect in this appeal.

¶ 8 "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (2001). "Indemnity agreements are to be narrowly interpreted in light of the parties' intentions as evidenced by the entire contract." *Consolidated Rail Corp. v. Delaware River Port Auth.*, 880 A.2d 628, 632 (Pa.Super.2005). "In interpreting the scope of an indemnification clause, the court must consider the four corners of the document and its surrounding circumstances." *Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 472 (Pa.Super.2003) (citations and quotation marks omitted).

¶ 9 Guided by these rules, we proceed to review the indemnification clauses in the various documents. The first indemnification clause is found in the Contract, and it requires Contractor to indemnify the School District for all loss or damage arising from Contractor's work, provided that the loss or damage resulted "from the improper performance of the work by the Contractor." Contract, ¶ 4 (R. at 29a). This indemnification clause is significant because it is not triggered unless the damage or loss results from the Contractor's performance.

¶ 10 The next indemnification clause is found in the General Conditions and in pertinent part it states:

### 3.18 INDEMNIFICATION

3.18.1 To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (**other than the Work itself**) including loss of use resulting therefrom, **but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor,** a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 3.18.

. . .

3.18.3 The obligations of the Contractor under the Paragraph 3.18 **shall not extend to the liability of the Architect,** the Architect's consultants, and agents and employees of any of them arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving of or the failure to give direction or instructions by the Architect, the Architect's consultants, and agents and employees of any of

them provided such giving or failure to give is the primary cause of the injury or damage.

General Conditions, ¶ 3.18 (emphasis added) (R. at 136a–37a). Although this indemnity provision shall be discussed in greater detail below, there are three important aspects to be noted: (1) the provision bars claims for injuries to or destruction of "the Work" itself; (2) Contractor is only liable if the claim arises from either its negligence or omission, regardless of whether it is only wholly or partially responsible; and (3) the provision specifically limits Contractor's liability to Architect so as not to include claims against Architect arising from its performance of various duties.

¶ 11 The third indemnification clause is found in the Supplementary General Conditions and it states:

1.9 INDEMNIFICATION AGAINST SUITS

A. The Contractor shall indemnify and save harmless the Owner, the Board, its members and officers, the Architect, his assistants, and all others who may act for the Board or the Owner from **all suits and actions of every kind, nature and description brought by anyone whatsoever against them or any of them in any manner connected with the Contract** here proposed or the work thereunder; provided that nothing herein stated shall be construed to preclude the Contractor from maintaining an action at law for money which may be due him under the Contract.

Supplementary General Conditions, ¶ 1.9 (emphasis added) (R. at 159a). This indemnification provision is very broad, and indeed, it is difficult to conceive of a claim that would not fall within the provision's ambit. Thus, in stark contrast to the indemnification provision set forth in the General Conditions, under the provision in the Supplementary General Conditions Contractor is exposed to the maximum array of potential claims for indemnification. Not surprisingly, Architect relies on this provision in asserting its claim for indemnification against Contractor. The fourth indemnification provision is found in the Special Conditions, and it is identical to the indemnification provision found in the Supplementary General Conditions. (R. at 176a).

### Which Indemnification Provision Applies

¶ 12 In the instant appeal, Contractor argues that when read together, the General Conditions and the Supplemental General Conditions are ambiguous because Paragraph 3.18 of the General Conditions limits Contractor's obligation to indemnify in situations in which it would otherwise be liable under Paragraph 1.9 of the Supplementary General Conditions. Brief for Contractor at 10, 13, 15. "A contract will be found to be ambiguous only if it is fairly susceptible of different constructions and capable of being understood in more than one sense. It is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous." *Tuthill v. Tuthill*, 763 A.2d 417, 420 (Pa.Super.2000) (citations omitted). "This question is not to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *RESPA of Pennsylvania, Inc. v. Skillman*, 768 A.2d 335, 340 (Pa.Super.2001) (citations and quotation marks omitted).

¶ 13 Architect argues that the indemnity provisions are not conflicting and instead complement one another. Reply Brief of Architect at 7. In particular, Architect identifies Contractor's obligation to indemnify for claims arising from injury to

or destruction of tangible property, with the exception of "the Work" itself, and then makes the following argument:

> [Contractor's] application of Article 3.18 and its subparts is therefore erroneous. Since this litigation arises from damage and malfunction of the chiller, the purchase and installation of which was the "Work" as defined at Article 1.13, it is expressly excluded from the scope of article Article 3.18. Hence the limitations of Article 3.18.3 have no application herein.

*Id.* (emphasis added). We find this interpretation to be plainly unreasonable. Architect's interpretation seeks to convert an exclusion of a particular liability into a limitation of the scope of Paragraph 3.18. The paragraph states that "the Contractor ... shall indemnify and hold harmless ... the Architect ... from and against claims ... **provided that such claim,** damage, loss or expense is attributable ... to injury to or destruction of tangible property (other than the Work itself)." General Conditions, ¶ 3.18 (R. at 136a) (emphasis added). We conclude that this provision makes Contractor liable for claims for damage to tangible property *provided that* the tangible property is not the Work itself.[4]

¶ 14 There are two other significant limitations placed on the Contractor's obligation to indemnify Architect. First, Contractor has no obligation to indemnify Architect unless the claims "are caused in whole or in part by negligent acts or omissions of the Contractor." *Id.*[5] Secondly, Subparagraph 3.18.3 specifically limits

Contractor's obligation to indemnify Architect so as not to include claims arising from, *inter alia,* its preparation or approval of maps, drawings, opinions, design specifications, or by its failure to give orders or directions. General Conditions, ¶ 3.18.3 (R. at 137a).

¶ 15 Therefore, a reasonable interpretation of Paragraph 3.18 is that Contractor has an obligation to indemnify Architect, but that this obligation is limited by specific provisions within the paragraph. In contrast, Paragraph 1.9 of the General Supplementary Conditions contains absolutely no limitations on the Contractor's obligation to indemnify. First, it applies to all claims "in any manner connected with the Contract ... or the work thereunder", and therefore, there is no restriction on claims arising from damage to the Work itself. Supplementary General Conditions, ¶ 1.9 (R. at 159a). Second, Contractor is obliged to indemnify Architect even if Contractor bears no fault for the claim. And third, there is no provision limiting Contractor's obligations to indemnify Architect for claims arising out of the Architect's failure to perform its work under the contract. Thus, depending on which indemnity provision one relies, the contract has a different meaning. We conclude that this creates an ambiguity.

¶ 16 "As a general rule, agreements will be construed against the drafter when terms are ambiguous." *Gallagher v. Fidelco, Inc.,* 441 Pa.Super. 223, 657 A.2d 31, 34 (1995). As stated above, it was Architect that drafted the General Conditions and Supplementary General Conditions that contain the contradictory and ambiguous indemnification provisions.

---

4. The General Conditions define the term "Work" as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment, and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the project." (R. at 131a).

5. As stated above, Paragraph 4 of the Contract contains a similar limitation on Contractor's obligation to indemnify the School District.

Construing these documents, against Architect as the drafter, we conclude that the more restrictive Paragraph 3.18 applies to Architect's claim against Contractor for indemnification.[6]

### Architect's Claim for Indemnification under Paragraph 3.18

¶ 17 Architect's claim for indemnification against Contractor arises from attorney's fees and costs that Architect incurred in defending itself in an action brought by the School District. The Complaint filed by the School District contains two counts against Architect, one for breach of contract and the other for negligence. However the factual basis for each count are the same and subparagraphs (a) through (d) of paragraph 56 (breach of contract) and subparagraphs (a) through (d) of paragraph 58 (negligence) are identical. Complaint, 9/10/01, ¶¶ 56, 58. The averments are as follows. The Architect breached the contract and was negligent by: (a) failing to study, analyze and recommend appropriate equipment; (b) failing to properly design and inspect the installation of the chiller; (c) failing to oversee the work by permitting steps to alter or modify the chiller; and (d) failing to declare Contractor in default and demanding a replacement chiller.

 ¶ 18 We begin by noting that in contrast to the more general Paragraph 1.9 of the General Supplementary Conditions, Paragraph 3.18 of the General Conditions actually states that the Architect may seek indemnification for attorney's fees, losses and expenses. General Conditions, ¶ 3.18.1 (R. at 136a). Therefore, if the School District's claims against Architect are covered under the provisions of Paragraph 3.18, then Architect could seek indemnification for attorney's fees, costs and expenses incurred while defending itself in the lawsuit. For the several alternative reasons that follow, we conclude that none of the School District's claims against Architect give rise to a right of indemnification against Contractor.

¶ 19 Initially, indemnification under Subparagraph 3.18.1 is conditioned upon the fact that the claim for indemnification be "attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself)." General Conditions, ¶ 3.18.1 (R. at 136a). The only arguable claim would be that the defective chiller constituted tangible property that had been injured or destroyed. However, there is nothing in the record to suggest that there was any occurrence which would constitute an injury to or destruction of the chiller. Rather, the parties all agree that the chiller was defective from day one and that it never worked either due to a defect in manufacturing or design that resulted in, *inter alia,* a misalignment of certain trays within the chiller.

¶ 20 Next, even if we were to assume that the defective chiller constituted injured or destroyed tangible property, all claims arising from it would be barred due to the Work exclusion. As stated above, the indemnification provision does not allow for claims for damages to tangible property when that tangible property is the Work itself. Clearly, the chiller was part of the Work.

---

**6.** Alternatively, we conclude that Paragraph 3.18 applies because it is far more specific than Paragraph 1.9. *See In re Alloy Mfg. Co. Employees Trust,* 411 Pa. 492, 192 A.2d 394, 396 (1963) (stating that "specific provisions ordinarily will be regarded as qualifying the meaning of broad general terms in relation to a particular subject"); *PBS Coal, Inc. v. Hard-* *hat Mining, Inc.,* 429 Pa.Super. 372, 632 A.2d 903, 906 (1993) (stating that "where specific or exact terms seem to conflict with broader or more general terms, the former is more likely to express the meaning of the parties with respect to the situation than the general language").

¶ 21 Finally, Subparagraph 3.18.3 leaves no doubt that Architect's claim against Contractor must fail. This provision expressly limits Contractor's obligation to Architect and states that it shall not extend to Architect's liability for claims arising from "(1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving of or the failure to give direction or instructions." General Conditions, ¶ 3.18.3 (R. at 137a). We conclude that all of the School District's claims against Architect are barred by this provision. For all the foregoing reasons, we conclude that Architect has not presented a viable claim for indemnification against Contractor arising from this case.

¶ 22 Order Affirmed.[7]

---

**7.** We note that we are affirming on a basis other than that relied upon by the trial court, which conducted its analysis on the premise that Paragraph 1.9 of the Supplementary General Conditions was applicable. *See Craley v. State Farm and Cas. Co.,* 895 A.2d 530, 533 (Pa.2006).