J-A09035-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BURLINGTON COAT FACTORY OF PENNSYLVANIA, LLC and BURLINGTON COAT FACTORY WAREHOUSE CORPORATION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GRACE CONSTRUCTION MANAGEMENT COMPANY, LLC | |
| Appellee | Nos. 2036 EDA 2013 |

Appeal from the Order Entered June 14, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2011, No. 001844

BEFORE:  BOWES, J., OTT, J., AND JENKINS, J.

MEMORANDUM BY: JENKINS, J.              **FILED SEPTEMBER 15, 2014**

This is an appeal by Burlington Coat Factory of Pennsylvania, LLC and Burlington Coat Factory Warehouse Corporation (collectively "BCF") from an order granting summary judgment to Grace Construction Management Company ("Grace") in BCF's action against Grace for contribution and indemnity.  We affirm.

Burlington Coat Factory Warehouse Corporation is the parent corporation of Burlington Coat Factory of Pennsylvania, LLC, which operates a store in Philadelphia, Pennsylvania.  Grace, a general contractor, entered into a written agreement ("Agreement") with BCF to perform renovations at

1

the store. The parties labeled the Agreement as between Grace and "Burlington Coat Factory," BCF's trade name.

On October 1, 2009, Brian Eddis, an employee of one of Grace's sub-sub-contractors, suffered injuries when at the store when the doors to a freight elevator closed and struck him in the back. Eddis and his wife filed a personal injury action against BCF, Schindler Elevator Corporation ("Schindler") and other defendants. Eddis did not sue Grace. BCF demanded a defense and indemnification from Grace pursuant to the Agreement, but Grace rejected the demand. In October 2011, BCF filed a separate action against Grace alleging breach of contract as well as counts for contribution and indemnity. BCF asserted that Grace's negligence caused the accident, or, in the alternative, the Agreement required Grace to indemnify BCF for BCF's own negligence.

In October 2012, the Eddises settled their action for $70,000, with BCF contributing $35,000 and Schindler contributing $35,000. There was no admission of liability in the settlement agreement.

BCF and Grace filed cross-motions for summary judgment. On June 14, 2013, the lower court granted Grace's motion for summary judgment and denied BCF's motion. The court concluded that there was no evidence that Grace's conduct caused Eddis' injuries, and that the Agreement did not

require Grace to indemnify BCF for BCF's own negligence. BCF filed this timely appeal[1].

BCF raises the following issues on appeal:

> 1. Did the lower court err in granting summary judgment to [Grace] on a finding that only [BCF] could be liable for an injury in its elevator when there was evidence on which a jury could find that: a) the elevator did not malfunction; and b) whether it malfunctioned or not, the injury was caused, at least in part, by the negligence of [Grace] or those for whose acts [Grace] undertook a duty to indemnify [BCF]?
>
> 2. Did the lower court err in granting summary judgment to [Grace] on a conclusion of law that the construction contract did not require [Grace] to indemnify [BCF] for its own negligence when a general indemnification provision in the General Conditions of the contract benefitting numerous parties limited the indemnification duty to "the extent caused by" negligence of [Grace] or anyone working under it, but a more specific provision in the contract, relating only to [BCF], provided for an unlimited duty to indemnify?
>
> 3. Did the lower court err in granting summary judgment to [Grace] upon a conclusion of law [that Grace] satisfied its obligation to procure insurance naming [BCF] as an additional insured, when the insurance procured was not primary and, accordingly, the parties['] intentions to allocate the burden of buying insurance for a construction project was defeated?

BCF Opening Brief, Statement Of Questions Involved. Stated more succinctly, BCF contends that summary judgment was improper because (1)

---

[1] The lower court did not order BCF to file a statement of matters complained of on appeal.

BCF has a valid cause of action against Grace for contribution, (2) Grace is required to indemnify BCF under the Agreement, and (3) Grace is required to obtain insurance that names BCF as an additional insured.

We first address BCF's claim against Grace for contribution. Contribution is available against any defendant, even one the original plaintiff did not sue. **Burch v. Sears, Roebuck & Co.,** 467 A.2d 615, 622 (Pa.Super.1983). "The right of contribution may be asserted during the original proceeding ... via joinder of the additional defendants, *see* Pa.R.C.P. 2252," or, as in the present case, "it may be pursued in a separate action by an original defendant who has previously been held liable to the original plaintiff." **Bianculli v. Turner Const. Co.,** 640 A.2d 461, 465 (Pa.Super.1994), *appeal denied,* 651 A.2d 541 (1994). Where the defendants in a contribution action are not defendants in the original case, "the party seeking contribution must stand in the shoes of that original plaintiff and prove that the new defendant was a joint tortfeasor in that his tortious conduct also caused the harm at issue." **Mattia v. Sears, Roebuck & Co.,** 531 A.2d 789, 791 (1987), *appeal denied,* 519 Pa. 660 (1988).

BCF contends, and Grace does not dispute, that Eddis was performing work for Grace when he suffered his injuries. BCF asserts that Grace negligently trained and supervised Eddis with respect to his use of the freight elevator. The trial court found that there was "scant" evidence that Grace breached any duty to Eddis and "no evidence, expert or otherwise,"

4

that Grace's alleged breach of its duty to train Eddis was the cause of his harm. We conclude that the trial court properly entered summary judgment against BCF due to BCF's failure to prove causation against Grace.

In an action in negligence, the plaintiff must prove four elements: (1) a duty or obligation recognized by law; (2) breach of the duty; (3) causal connection between the actor's breach of the duty and the resulting injury; and (4) actual loss or damage suffered by complainant. *Merlini ex rel. Merlini v. Gallitzin Water Authority*, 980 A.2d 502, 506 (Pa.2009). The mere existence of negligence and the occurrence of injury "are insufficient to impose liability upon anyone as there remains to be proved the link of causation" between the defendant's conduct and the plaintiff's injury. *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa.Super.2005) (citations omitted). "Stated another way, the defendant's conduct must be shown to have been the proximate cause of plaintiff's injury." *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa.1978). Proximate cause "is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant; and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm." *Id*. Proximate cause "does not exist where the causal chain of events resulting in plaintiff's injury is so remote as to appear highly extraordinary that the conduct could

have brought about the harm." **Lux**, **supra**, 887 A.2d at 1286-87 (citation omitted).

Proximate cause is a question of law that the court must determine before placing the issue of actual cause before the jury. **Id**. A determination of legal causation essentially concerns "whether the negligence, if any, was so remote that as a matter of law, [the actor] cannot be held legally responsible for [the] harm which subsequently occurred." **Id**. Therefore, the court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of. **Id**.

BCF argues that Eddis operated the freight elevator negligently by failing to push the "stop" button to hold the doors open while he loaded the elevator. BCF also argues that Grace was negligent for failing to train Eddis how to operate the elevator and for failing to follow its own safety standards in the use of elevators. BCF Opening Brief, p. 21 (a jury could "find that Grace's failure to train Eddis to operate the elevator, its failure to enforce its prohibition on using the elevator unassisted, when viewed in light of evidence that Grace generally disregarded its own safety standards, were all factors that *substantially contributed* to Eddis being injured"). Conspicuously absent from the record, however, is any evidence that Grace's alleged negligence was the proximate cause of Eddis' injuries. The only expert report in the record is by Eddis' expert, Pablo Ross, P.E., who opined,

after detailed analysis, that the proximate cause of Eddis' injuries was BCF's and Schindler's failure to properly maintain and repair the elevator[2]. R.R. 531-547a. Ross did not attribute Eddis' injuries to Grace. *Id*.

Expert testimony is necessary when the subject matter of a case is beyond the ken of the average layperson. ***Vazquez v. CHS Professional Practice, P.C.***, 39 A.3d 395, 398-99 (Pa.Super.2012). In our view, the question of whether Grace's conduct was a proximate cause of Eddis' injuries requires expert testimony. At least four parties – BCF, Schindler, Grace and Eddis himself – theoretically could have been responsible for Eddis' injuries, making it difficult to decide which actor(s) caused the accident without the testimony of an accident reconstructionist and/or expert on the use of

---

[2] Mr. Ross concluded:

> Based on the results of my investigation and within a reasonable degree of engineering and scientific certainty, I have concluded Mr. Eddis's injuries reported at the subject property were caused by BCF's failure to properly maintain and repair the subject elevator, gate and associated components. My investigation revealed BCF repeatedly ignored requests to repair the gate and doors of the subject elevator, creating an unsafe, unreliable and hazardous condition that resulted in Mr. Eddis injuries. I have also concluded Schindler failed to properly repair the subject elevator, specifically the alarm bell prior to the incident resulting in Mr. Eddis's injuries.

> It is evident the incident was caused by a failure of the safety shoe and alarm bell of the subject elevator. . .on the date of the incident or by the gate completely derailing from its track, resulting in the alarm bell not sounding. These conditions and the lack of a proximity edge installed on the subject elevator resulted in Mr. Eddis's injuries on the date of the incident.

R.R. 547-48.

freight elevators. Moreover, Eddis submitted a detailed expert report attributing the cause of the accident to BCF and Schindler while remaining silent about Grace. Given the number of potentially blameworthy actors and Eddis' well-crafted expert report that points away from Grace, it was incumbent upon BCF to submit an expert report establishing a causal nexus between Grace's negligence and Eddis' injuries. BCF's failure to take this step dooms its action for contribution.

A recent decision by this Court, **MIIX Insurance Co. v. Epstein ("MIIX")**, 937 A.2d 469 (Pa.Super.2009), is instructive. There, a hospital that was found liable in a medical malpractice action brought an action for contribution against two hospital residents who were not parties to the original action[3]. The trial court granted summary judgment to the residents in the contribution action because the hospital failed to produce expert reports establishing their negligence. We affirmed, reasoning that expert reports were "indispensable" to an action for professional negligence against the residents. *Id*. at 474 n. 6. Unlike **MIIX**, this case does not involve professional negligence, but we still think its rationale applies to accident scenarios such as the case at bar. **MIIX** teaches that when the underlying action involves intricate facts under which multiple persons may share liability, and a party defendant in the underlying action seeks contribution

---

[3] The verdict slip in the original action inquired whether the residents were negligent, and the jury answered these questions in the affirmative. But because the residents were not parties in the original action, the jury's responses were not binding on the residents. *Id*., 937 A.2d at 473-74.

from a non-party, it is important, and often essential, for the party defendant to obtain an expert report that proves the non-party's liability. In this case, BCF ignored **MIIX's** lesson by failing to submit an expert report establishing a causal nexus between Grace's alleged negligent supervision over Eddis and Eddis' injuries. Due to this critical deficiency, the trial court properly found that BCF's action for contribution against Grace fails as a matter of law.

In its second issue on appeal, BCF argues that the Agreement between Grace and BCF obligates Grace to indemnify BCF for BCF's own negligence. We disagree. There are two conflicting indemnity provisions in the Agreement -- and since BCF drafted the Agreement, the more restrictive provision applies, under which BCF cannot obtain indemnification.

An agreement to indemnify is "an obligation resting upon one person to make good a loss which another has incurred or may incur by acting at the request of the former, or for the former's benefit." **Potts v. Dow Chemical Co.,** 415 A.2d 1220, 1221 (Pa.Super.1980). "Indemnity agreements are to be narrowly interpreted in light of the parties' intentions as evidenced by the entire contract." **Consolidated Rail Corp. v. Delaware River Port Auth.,** 880 A.2d 628, 632 (Pa.Super.2005). "In interpreting the scope of an indemnification clause, the court must consider the four corners of the document and its surrounding circumstances." **Widmer Engineering, Inc. v. Dufalla**, 837 A.2d 459, 472 (Pa.Super.2003)

(citations and quotation marks omitted). To establish the right to indemnification, the alleged indemnitee (herein BCF) must establish scope of the indemnification agreement; the nature of the underlying claim; its coverage by the agreement; the reasonableness of the alleged expenses; and, where the underlying action is settled rather than resolved by payment of judgment, the validity of the underlying claim and the reasonableness of the settlement. *McClure v. Deerland Corp.*, 585 A.2d 19, 22 (Pa.Super.1991).

A party cannot obtain indemnification for its own negligence unless the contract clearly and unequivocally provides for such indemnification. *Ruzzi v. Butler Petroleum Co.,* 588 A.2d 1, 7 (Pa.1991); *Perry v. Payne,* 66 A. 553 (Pa.1907). As our Supreme Court recently observed: "Unless the language is clear and unambiguous ... we must opt for the interpretation that does not shoulder [subcontractor] with the fiscal responsibility for [contractor's] and [owner's] negligence." *Greer v. City of Phila., et al.,* 795 A.2d 376, 380 (Pa.2002). Thus, where an agreement includes multiple contradictory indemnity provisions drafted by the same person, we construe the agreement against the drafter and enforce the narrower provision. *Chester Upland School District v. Edward J. Meloney, Inc.*, 901 A.2d 1055, 1061-62 (Pa.Super.2006).

The record reflects that on August 28, 2009, BCF drafted the Agreement and mailed it to Grace. R.R. 418. The Agreement includes two indemnity provisions. The first (Provision I) states:

> To the fullest extent permitted by law, the Contractor (Grace) shall indemnify and hold harmless *BCF, the Architect, the Engineer, the architect's consultants and agents and employees of any of them* from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Work[4], provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, *but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable,* regardless of whether or not such claim, damage, loss or expenses is caused in part by a party indemnified hereunder.

R.R. 425-26 [emphasis added]. The second provision (Provision II) states:

> [Grace] releases BCF and assumes entire responsibility and liability for any and all claims and/or damages or any nature or character whatsoever arising under the Contract Documents, by operation of law, or in any other manner *with respect to work covered by this CONTRACT* and agrees to indemnify and save BCF harmless from and against all claims, demands, liabilities, interest, loss, damage, attorneys' fees, costs, and expenses of whatsoever kind or nature, whether for property

---

[4] The Agreement defines "work" as "the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided by the Contractor to fulfill the Contractor's obligations." The Agreement includes a lengthy list of tasks that Grace is obligated to perform.

> damage, personal injury or bodily injury (including death) to any and all persons, whether employees of [Grace], BCF or others, or otherwise, *caused or occasioned thereby, resulting therefrom, arising out of or therefrom, or occurring in connection therewith*...

R.R. 432 [emphasis added].

The first and narrower indemnity provision does not obligate Grace to indemnify BCF for BCF's negligence, but the second provision does. Based on our reasoning in **Chester Upland School District**, **supra**, we find that the first and narrower indemnity provision precludes BCF from obtaining indemnification. In that decision, the School District contracted with various parties, among them Contractor and Architect, for the purchase and installation of a new chiller and cooling tower for the HVAC system at Chester High School. The chiller malfunctioned, and the School District filed an action against, among other parties, Contractor and Architect. Architect filed a cross-claim against Contractor demanding indemnification for costs and attorney fees incurred in defending itself against the School District's claims.

Architect drafted two conflicting indemnification provisions in the contractual documents. The first, more restrictive provision stated:

> To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided

12

that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, *but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor[5],* a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph...

The obligations of the Contractor under th[is] Paragraph. . . *shall not extend to the liability of the Architect,* the Architect's consultants, and agents and employees of any of them arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving of or the failure to give direction or instructions by the Architect, the Architect's consultants, and agents and employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

***Id***., 901 A.2d at 1059-60 (emphasis in original).  Under this provision, Contractor was only liable if the claim arose from either its negligence or omission, in whole or in part, or from that of its subcontractor.  Moreover, this provision specifically limited Contractor's liability to Architect so as not to include claims against Architect arising from its performance of various duties.

---

[5] Interestingly, this italicized language is identical to the crucial italicized language in the Provision I of the Agreement.  **See** Provision I, page 10, ***supra***.

13

The second (and broader) provision stated:

> The Contractor shall indemnify and save harmless the Owner, the Board, its members and officers, the Architect, his assistants, and all others who may act for the Board or the Owner from *all suits and actions of every kind, nature and description brought by anyone whatsoever against them or any of them in any manner connected with the Contract* here proposed or the work thereunder; provided that nothing herein stated shall be construed to preclude the Contractor from maintaining an action at law for money which may be due him under the Contract.

*Id*. at 1060 (emphasis in original). Under this provision, Contractor was liable for all claims brought against Architect in connection with the contract.

This Court held that the provisions were "contradictory and ambiguous." *Id.* at 1061. Based on the precept that "agreements will be construed against the drafter when terms are ambiguous," we construed the agreement against Architect and concluded that the first, more restrictive provision applied, *Id*. at 1061-62, and held that Architect could not obtain indemnification under this provision.

*Chester Upland School District* requires us to affirm the trial court's decision against BCF in the case at bar. The record demonstrates that BCF drafted both indemnity provisions in the Agreement with Grace. Grace asserted in its summary judgment papers below that BCF drafted the Agreement, R.R. 584, and BCF did not deny this point. BCF mailed the Agreement with both provisions to Grace, R.R. 418, and there is no evidence that Grace amended either provision before signing the Agreement.

Moreover, the indemnity provisions are contradictory. Provision I requires Grace to indemnify BCF only to the extent Grace is negligent; Provision II requires Grace to indemnify BCF for BCF's own negligence, whether or not Grace is negligent. *Chester Upland School District* requires us to resolve this ambiguity by construing the Agreement against the drafter, BCF, and enforcing the more restrictive indemnity provision, Provision I. Under this provision, BCF can obtain indemnification for Grace's negligence but not for its own. And as discussed above, BCF's claim of negligence against Grace fails due to BCF's failure to muster causation evidence against Grace.

Not only does our interpretation of the Agreement follow *Chester Upland School District*, but it also is faithful to our Supreme Court's directive to deny indemnification to a party for its own negligence unless the agreement clearly and unequivocally provides this remedy. The Supreme Court stated in *Greer* that an indemnification agreement is not clear and unambiguous unless the agreement "puts it beyond doubt" that the indemnitor (Grace) intends to indemnify the indemnitee (BCF) for the indemnitee's own negligence. *Id*., 795 A.2d at 380. Instead of putting the matter beyond doubt, the presence of conflicting indemnity provisions in the Agreement *creates* doubt as to whether Grace intends to indemnify BCF for BCF's own negligence. Given our duty to interpret indemnification provisions narrowly, we are unwilling to award indemnification under these circumstances.

15

Finally, we see no merit in BCF's third argument that Grace breached its duty to obtain insurance naming BCF as an additional insured. The question of whether Grace obtained such insurance would only become relevant if Grace had a duty to pay contribution or indemnity to BCF. For the reasons provided above, no such duty exists[6].

Order affirmed.

Judge Ott joins in memorandum.

Judge Bowes files concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2014

---

[6] Since our decision rests on the grounds discussed above, we will not address Grace's additional arguments that (1) BCF has no right to indemnity because it voluntarily paid the settlement to Eddis and (2) BCF has no standing because only "Burlington Coat Factory" was a party to the Agreement with Grace instead of Burlington Coat Factory of Pennsylvania, LLC and Burlington Coat Factory Warehouse Corporation.

16