MIIX INSURANCE CO., in Rehabilitation and GHS–Parkview Hospital, Appellants

v.

Scott EPSTEIN, D.O. and Renee Marie Bender, D.O., Appellees.

Superior Court of Pennsylvania.

Argued June 27, 2007.
Filed Nov. 26, 2007.

Gary M. Samms, Philadelphia, for appellants.

Dean F. Murtagh, Philadelphia, for appellees.

BEFORE: TODD, GANTMAN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellants[1] file this appeal from the order entered in the Philadelphia County Court of Common Pleas, granting summary judgment in favor of Appellees, defendants in Appellants' indemnification/contribution action. We affirm, finding that because no judicial determination of Appellees' liability resulted from the underlying malpractice action on which this suit is based, Appellants were required to produce the expert reports necessary for a determination of whether Appellees had been medically negligent.

¶ 2 In January of 1996, plaintiff Rosalyn Rios suffered a ruptured uterus and the consequent stillborn birth of her son at Appellant hospital where Appellees were residents. She and the child's estate (original plaintiffs) filed a malpractice action against, *inter alia,* Appellant hospital, but did not name Appellees as defendants.[2]

---

1. MIIX Insurance Company is Appellant Hospital's insurer.

2. Appellants alleged that Appellees' identities were unknown when the complaint was filed,

On February 7, 2001, the original plaintiffs moved to join Appellees as defendants, but their motion was denied by order of March 19, 2001 on grounds that the statute of limitations had run. Nonetheless, the original plaintiffs conducted depositions of Appellees who also testified at trial as fact witnesses.

¶ 3 At the conclusion of trial in December of 2001, the jury returned a verdict in favor of plaintiffs in the amount of $650,000, a sum later reduced to $333,333.55 in settlement. On a special verdict slip which does not appear in the certified record of the malpractice action, the jury specifically found that Appellees, despite not having been party to the litigation, had been negligent in their care of Rios and her son.[3]

¶ 4 In December of 2003,[4] Appellant hospital commenced suit seeking indemnity and contribution. Appellees' motion for summary judgment was denied, but the trial court directed that Appellant produce expert reports. In an order of June 16, 2005, the court explained that because Appellees had not been party to the malpractice litigation, their negligence with respect to that cause of action must be demonstrated. In so doing, the court specified that Appellant was "limited to proving one or more of the same theories of medical malpractice as was presented during the trial of *Rios, et al. v. GHS Parkview Hospital, et al.,..*, and may present the same or different expert witnesses." (Order of 6/16/05). The case was discontinued in December of 2005.

¶ 5 Five days prior to the discontinuance, Appellant hospital, this time in conjunction with Appellant insurer, commenced a second suit for indemnity and contribution, and submitted the expert reports from the malpractice action. Appellees moved for summary judgment, which the trial court granted after a hearing, and this appeal followed.

thus the Complaint listed John Doe (1) and (2) among the defendants. *(See* Complaint, filed 12/5/05, at 3).

3. The relevant portions of the special verdict, as they appear in Appellants' complaint here, stated:

   **Question # 1:** Was Scott Epstein, D.O. an agent of GHS Parkview Hospital? [Answer: YES]
   **Question # 2[:]** Was Renee Bender, D.O. an agent of GHS–Parkview Hospital? [Answer: YES]
   * * *
   **Question # 3[:].** If you answered "yes" to Question # 1, was Dr. Epstein negligent when treating Roslyn Rios on January 14, 1996? [Answer: YES]
   * * *
   **Question # 5:** Was the negligence of Dr. Epstein a substantial factor in causing harm to Roslyn Rios? [Answer: YES]
   * * *
   **Question # 6:..** If you answered "yes" to Question # 2, was Dr. Bender negligent when treating Roslyn Rios on January 14, 1996? [Answer: YES]
   * * *

   **Question # 8:** Was the negligence of Dr. Bender a substantial factor in causing harm to Roslyn Rios?
   * * *
   **Question # 16:** If you find that one or more of the following are negligent and that their negligence was a substantial factor in causing harm to Roslyn Rios,
   (a) Dr. Epstein or Dr. Bender
   (b) Vanguard OB/GYN Associates
   (b) Roslyn Rios
   state the percentage of liability attributable to each party (the negligence of Dr. Epstein and/or Dr. Bender is to be attributed to GHS–Parkview Hospital). The total must add up to 100%.

   | GHS–Parkview Hospital | 70% |
   | Vanguard OB/GYN Associates | 20% |
   | Roslyn Rios | 10% |

   (Civil Complaint, Exhibit B, filed Dec. 15, 2005).

4. A similar action filed the previous April had been dismissed because the complaint lacked a properly signed verification.

¶ 6 Appellants' challenge to the court's entry of summary judgment revolves around the necessity, which they contest, of expert reports. They contend that Appellees' negligence was specifically determined by the jury in the original action, adding that expert reports have never been required for indemnity and contribution actions. Appellants argue that, at a minimum, genuine issues of material fact existed at the time of Appellees' summary judgment motion.

¶ 7 When addressing a challenge to a grant of summary judgment:

[A] reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule, Pa.R.C.P. 1035.2[ ]. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. We will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Tyco Electronics Corp. v. Davis,* 895 A.2d 638, 640 (Pa.Super.2006) (quoting *Feldman v. Pa. Med. Prof'l. Liab. Catastrophe Loss Fund,* 868 A.2d 1206, 1208 (Pa.Super.2005), appeal denied, 584 Pa. 701, 882 A.2d 1006 (2005)).

¶ 8 Our Supreme Court noted the standards for common law indemnity in *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951):

The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law

to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.

*Id.* at 370 (emphasis removed). The proper inquiry for an indemnity claim is "whether the party seeking indemnity had **any part** in causing the injury." *Sirianni v. Nugent Bros., Inc.,* 509 Pa. 564, 506 A.2d 868, 871 (1986) (emphasis in original). A right of contribution, on the other hand, exists when a "joint tortfeasor has discharged the common liability or paid more than his pro rata share," and the joint tortfeasor's liability "to the injured persons has been extinguished by the settlement." *Swartz v. Sunderland,* 403 Pa. 222, 169 A.2d 289, 291 (1961). *See also* 42 Pa.C.S.A. §§ 8321–27.

¶ 9 Indemnity and contribution are available against any defendant, even one the original plaintiff did not sue. *Burch v. Sears, Roebuck & Co.,* 320 Pa.Super. 444, 467 A.2d 615, 622 (1983). An original defendant "may pay or settle the claim voluntarily and recover against the person from whom he is entitled to indemnity, provided he has given proper notice and can establish that the settlement was fair and reasonable." *Tugboat Indian Co. v. A/S Ivarans Rederi,* 334 Pa. 15, 5 A.2d 153, 156 (1939). "The right of contribution [and indemnity] may be asserted during the original proceeding ... via joinder of the additional defendants, *see* Pa.R.C.P. 2252, or it may be pursued in a separate action by an original defendant who has previously been held liable to the original plaintiff." *Bianculli v. Turner Const. Co.,* 433 Pa.Super. 237, 640 A.2d 461, 465 (1994), *appeal denied,* 539 Pa. 655, 651 A.2d 541 (1994) (quoting *Oviatt v. Auto-*

*mated Entrance Sys. Co., Inc.,* 400 Pa.Super. 493, 583 A.2d 1223, 1226 (1990)).

¶ 10 Instantly, the trial court concluded that Appellees "were not found personally liable in the [original] action. [They] were not parties to the [original] action," thus Appellants were required to produce expert opinions to prove Appellees' negligence. (Trial Ct. Op., 2/20/07, at 4). The trial court's conclusion is based upon the well-settled standard that "a medical malpractice plaintiff generally must produce the opinion of a medical expert to demonstrate the elements of his cause of action." *Miller v. Sacred Heart Hosp.,* 753 A.2d 829, 833 (Pa.Super.2000). The trial court accordingly found that, in seeking indemnity from Appellees, Appellants are indirectly alleging Appellees' medical malpractice. We find the court's observation accurate.

■ ¶ 11 Appellants place great reliance on the notion that the jury found Appellees' negligent in the malpractice action as evidenced by the special verdict sheet. We are not persuaded. Preliminarily, we note that the special verdict sheet from which the putative adjudication of Appellees' negligence is derived is not of record in the negligence matter. The weight to be accorded it is not further improved either by the absence of any signature or date, or by the fact that it is not recorded as part of an official record or form. More significant, however, is the context of its creation: even assuming that the document could be construed as in some way authentic and/or authoritative, because Appellees were not party to the prior action, any finding of their liability for damages is void *ab initio. See Shay v. Flight C Helicopter Services, Inc.,* 822 A.2d 1, 11 (Pa.Super.2003). Thus, although they appeared as fact witnesses, the court had no

authority over them. *See Casey v. GAF Corp.,* 828 A.2d 362, 370 (Pa.Super.2003), *appeal denied,* 577 Pa. 684, 844 A.2d 550 (2004). As a result, Appellants' assertion that "The *Rios* court entered judgment upon a determination that the doctors were negligent," (Appellants' Brief at 16), is simply wrong. Further, Appellees were definitively immunized from prosecution in that case by the running of the statute of limitations.[5] To countenance Appellants' present attempt to subject Appellees to liability without a showing of medical negligence on their part would perpetuate the violation of due process memorialized by the special verdict sheet; Appellees were never, as *Bianculli, supra,* requires, legitimately "held liable to the original plaintiff."

¶ 12 The fact that Appellees were not party to the malpractice action also neutralizes Appellants' insistence that any variance between the outcome in that matter and in this is precluded either by *res judicata* or collateral estoppel. One of the mandatory elements of the former doctrine, not met here, is, by Appellants' own account, "identity in the persons and parties to the action." (Appellants' Brief at 17) (citing *Gatling v. Eaton Corp.,* 807 A.2d 283, 287 (Pa.Super.2002)). As to the notion that Appellees are collaterally estopped from attacking the conclusions drawn on the special verdict sheet in the malpractice action, for that theory to apply we must ignore a criterion of collateral estoppel that there was a final judgment of the merits. *See Yamulla Trucking & Excavating Co., Inc. v. Justofin,* 771 A.2d 782, 786 (Pa.Super.2001), *appeal denied,* 566 Pa. 686, 784 A.2d 119 (2001). We again point out that Appellees' status as a

---

5. Theoretically, the same protection from a contribution action is not afforded them, since the statute does not begin to run on a claim for contribution until a judgment has been entered in favor of the original plaintiff. *See Mattia, infra* at 792.

non-party renders that element beyond reach.

■ ¶ 13 Moreover, where the defendants in a contribution action were not defendants in the original case, "the party seeking contribution must stand in the shoes of that original plaintiff and prove that the new defendant was a joint tortfeasor in that his tortious conduct also caused the harm at issue." *Mattia v. Sears, Roebuck & Co.*, 366 Pa.Super. 504, 531 A.2d 789, 791 (1987), *appeal denied*, 546 A.2d 622, 519 Pa. 660 (1988). Thus the necessity to provide expert information concerning the alleged negligence obtains where the contribution/indemnity action is grounded in a claim of professional negligence and no valid judicial determination to that effect is in place. For these reasons, Appellants' insistence that expert reports were unnecessary because of the prior jury determination of Appellees' negligence is meritless.[6]

■ ¶ 14 As to the efficacy of the expert reports which were submitted, there, too, Appellants' contentions are not persuasive. The reports from the prior action, while finding the hospital staff in general negligent, failed to name Appellees. As the trial court noted, "Neither defendant[ ] in the instant litigation ... [was] specifically identified as having deviated from the standard of care in either report." (Trial Ct. Op. at 1). The plaintiff's purpose in providing expert evidence is to establish the defendant's actions as the source of his harm, as it is "[his] burden to prove that the harm suffered was due to the conduct of the defendant." *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1284 (1978). As our Supreme Court has explained:

the mere occurrence of an injury does not prove negligence and ... an admittedly negligent act does not necessarily entail liability; rather even when it is established that the defendant breached some duty of care owed the defendant, **it is incumbent upon a plaintiff to establish a causal connection between defendant's conduct and the plaintiff's injury.**

*Id.* (emphasis added). The causal connection may not be scattershot; rather, it is the specific conduct of the specific defendant which must be proven for liability to attach, that is, "[a]ny action in negligence is premised on the existence of a duty owed by one party to another." *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 890 (1994). "[A] duty consists of one party's obligation to conform to a particular standard of care for the protection of another." *R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740, 746 (2005). Both particularity, as to the negligent act, and as well as specificity, as to the negligent person, are required. The reports submitted by Appellants cannot function as proof of Appellees' alleged noncompliance with the standard of care owed by them to Mrs. Rios, as what is reported is only a causative role in the injury she suffered, but not who played it.

¶ 15 For the foregoing reasons, no issues of material fact remain to allow Appellants to avoid the summary judgment properly entered by the trial court.

¶ 16 Order affirmed.

---

**6.** The indispensable nature of expert reports to support otherwise unproven claims of Appellees' negligence obviates any necessity to examine Appellants' claim that the order of June 15, 2005, directing the submission of expert reports in the action brought by Appellant hospital, is of no effect in the instant case.