**Bridgeman v. Cruz**

*Jason R. Ohliger,* for plaintiff.
*Daniel D. Stofko and Edward J. McKarski,* for defendants.

MILLER, *J.,* January 7, 2011—The current dispute stems from an automobile accident which occurred on August 8, 2008. On that date, plaintiff Alexandra Bridgeman ("plaintiff") and defendant Danny Cruz ("Cruz") were traveling in opposite directions

on Coolbaugh Drive in Middle Smithfield Township, Monroe County, Pennsylvania. Cruz was driving a car owned by defendant Mary Rodriguez ("Rodriguez"). Cruz struck the rear of the car in front of him, driven by Sylvette Hartroth, as Ms. Hartroth attempted to turn left into Pocono Heights. The impact sent Ms. Hartroth's car into the oncoming lane where it struck plaintiff's vehicle.

Plaintiff filed a complaint on July 27, 2010, which asserted a claim in negligence against Cruz and claims for vicarious liability and negligent entrustment against Rodriguez. Plaintiff also asserted a claim against defendant Nationwide Insurance Company ("Nationwide"), plaintiff's insurer, for recovery above and beyond the alleged tortfeasor-defendants' applicable policy limits, under plaintiff's insurance contract which provided for uninsured ("UM") and underinsured motorist ("UIM") coverage pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. C.S. § 1701, et seq.

On September 20, 2010, Nationwide filed a cross-claim which alleged that defendants Cruz and Rodriguez were liable to Nationwide for contribution or indemnification of any amounts that Nationwide had to pay to plaintiff under the terms of plaintiff's uninsured and underinsured motorist coverage. Nationwide claimed, essentially, that any amount it was required to pay to plaintiff under the policy was due to the actions of Cruz and Rodriguez, the alleged primary tortfeasors. Defendants Cruz and Rodriguez filed preliminary objections to Nationwide's cross-claim on October 7, 2010 and argued that Nationwide had no right to contribution or indemnification because they

were brought into the case on an uninsured or underinsured motorist theory of recovery.

We held oral arguments on December 6, 2010 and are now ready to rule on this matter. For the following reasons, we sustain defendants' preliminary objections and strike Nationwide's cross-claim, as Nationwide's claim for contribution or indemnification is not yet ripe for judicial review.

The legal concept of justiciability encompasses the related questions of who may properly bring a claim before a court, and when that claim may properly be brought. A litigant must satisfy three threshold requirements before a claim can be considered justiciable: (1) the litigant must have standing to bring the action; (2) the claim must not be moot; and (3) the claim must be ripe for judicial review. See *Rendell v. Pennsylvania State Ethics Comm'n*, 603 Pa. 292, 983 A.2d 708 (2009).

To be ripe for judicial review, "an actual case or controversy must exist at every stage of the judicial process." *Richards v. Trimbur*, 543 A.2d 116, 119 (Pa. Super. 1988). The rationale for the ripeness doctrine is to prevent premature adjudications. *Rouse & Associates-Ship Road Land LP v. Pennsylvania Environmental Quality Bd.*, 642 A.2d 642 (Pa. Cmwlth. 1994). To determine whether a claim is ripe for review, the court must consider two factors: (1) whether the issues are adequately developed for judicial review, and (2) what hardships, if any, the parties will suffer if review is delayed. *Braksator v. Zoning Hearing Bd. of Northampton Twp.*, 641 A.2d 44 (Pa. Cmwlth. 1994). The court should analyze "whether the claim involves uncertain or contingent events that may not occur as antici-

pated or at all," and whether any actual hardship creates a " 'direct and immediate' dilemma for the parties, such that the lack of pre-enforcement review will put the parties to costly choices." *Alaica v. Ridge*, 784 A.2d 837, 843 (Pa. Cmwlth. 2001) (citing *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319 (3d Cir. 1998)).

The Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. § 1701, et seq., provides in relevant part that insurers must offer uninsured and underinsured motorists coverage to prospective automobile insurance purchasers. See 75 Pa. C.S. § 1731. The purpose of uninsured and underinsured motorist coverage is to pass the risk of loss to the insurer when a tortfeasor cannot fully compensate the insured for the insured's injuries. *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 746 A.2d 1118 (Pa. Super. 1999).

"[U]nderinsurance coverage is always secondary, or excess, coverage by its very nature; the insurer pays nothing unless and until the tortfeasor's coverage is exhausted, and then only if damages exceed the tortfeasor's insurance limits." *Allwein v. Donegal Mut. Ins. Co.*, 671 A.2d 744, 757 (Pa. Super. 1996). In other words, the insured must first recover from the primary tortfeasor and then look to the uninsured or underinsured motorist carrier for excess coverage. *Id.* Additionally, a claim for uninsured or underinsured motorist benefits is not ripe until all other coverage limits have been exhausted. *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1150 (Pa. Super. 2006).

After the insurer compensates the insured, the "insurer who paid a UIM claim acquires, by operation of law, the right to seek subrogation from any person that the in-

sured could have pursued who should rightly have borne the loss." *Pusl v. Means*, 982 A.2d 550 (Pa. Super. 2009). While no specific statutory provision governs insurer's subrogation rights involving uninsured and underinsured motorist claims, common law rights of subrogation are available to insurers who pay underinsured benefits to their insureds. *Johnson v. Beane*, 541 Pa. 449, 664 A.2d 96 (1995). Furthermore, "the insured must be fully compensated, or 'made whole,' for injuries suffered before the right of subrogation on the part of the insurer arises." *Pusl*, 982 A.2d at 557.

Plaintiff's insurance contract with defendant Nationwide contains certain provisions that detail the proper procedures for recovery and subrogation under the contract. For example, the contract states:

Before recovery, [Nationwide] and any injured party seeking protection under this coverage must agree on two points:

a) whether there is a legal right to recover damages from the owner or driver of an uninsured [or underinsured] motor vehicle; and if so,

b) the amount of such damages. Brief in opposition to defendants' preliminary objections to new matter cross-claim of defendant Nationwide (hereinafter "brief in opposition to preliminary objections").

The insurance contract states that "[Nationwide] require[s] the insured to file suit against any and all liable parties to preserve and protect [Nationwide's] subrogation rights. Failure to do so precludes re-

covery under this coverage." Brief in opposition to preliminary objections. The contract also provides:

> [A]fter paying a loss to [the insured] . . . [Nationwide] will have the insured's right to sue for or otherwise recover such loss from anyone else who may be liable.... [Nationwide is] not entitled to recovery under uninsured motorists or underinsured motorists coverage until the insured has been fully compensated for damages. Brief in opposition to preliminary objections.

Well-settled principles of contract interpretation require us to apply unambiguous terms of a contract as evidence of the contracting parties' intent. See *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470, 905 A.2d 462 (2006). By the unambiguous terms of the contract and according to legal principles of contract interpretation, Nationwide reserved the right to recover any amounts paid to the insured only after Nationwide has compensated the insured for their damages in excess of the tortfeasor's applicable policy limit.

Nationwide, however, filed a cross-claim against defendants Cruz and Rodriguez in the present suit for indemnification or contribution of any amounts Nationwide might be required to pay out to plaintiff in excess of the defendants' applicable policy limits.

Nationwide's cross-claim is more appropriately styled a subrogation claim, not a claim for contribution or indemnification, because Nationwide seeks to recover for amounts they might have to pay to plaintiff, the insured, due to the alleged tortfeasors' negligence. A claim for contribution or indemnification, on the other hand, arises be-

tween jointly or severally liable tortfeasors who propose to transfer the burden of loss amongst each other. See *MIIX Ins. Co. v. Epstein*, 937 A.2d 469, 472 (Pa. Super. 2007). Indemnification shifts the entire burden to the primary tortfeasor while contribution allots damages between those who share common liability toward the injured party. *Id.* Plaintiff cannot, in good faith, allege that Nationwide is liable either jointly or severally as a primary tortfeasor. Rather, plaintiff brought Nationwide into the case on an uninsured or underinsured motorists coverage theory of liability, in order to recover damages beyond the other defendants' applicable policy limits.

Here, plaintiff's suit to determine liability against alleged tortfeasor-defendants Cruz and Rodriguez is pending, so plaintiff has not established her right to recovery and the amount of damages. Nationwide has not yet compensated plaintiff for her damages, if any, in excess of defendants' insurance policy limits. Accordingly, by the express terms of Nationwide's insurance contract with plaintiff, which states that "[Nationwide is] not entitled to recovery under [UM] or [UIM] coverage until the insured has been fully compensated for damages," Nationwide may not recover against defendants Cruz and Rodriguez unless and until Nationwide compensates plaintiff for damages in excess of alleged tortfeasor-defendants' policy limits.

Similarly, Nationwide's cross-claim is procedurally and substantively improper because the claim is not yet ripe for judicial review. As noted above, the first prong of the ripeness analysis considers whether the issues presented in the claim are adequately developed for judicial review. In the court's opinion, Nationwide's cross-claim

clearly involves both uncertain and contingent events which render the issues insufficiently developed for review. For one, Nationwide's right to recovery on their cross-claim hinges upon the result in the underlying suit between plaintiff and defendants Cruz and Rodriguez - Nationwide might only recover from Cruz and Rodriguez if plaintiff recovers an amount greater than tortfeasor - defendants' applicable policy limits in the present case, and pays that excess measure of damages to plaintiff. From this perspective, the viability of Nationwide's cross-claim is wholly contingent on the outcome of the suit between plaintiff and defendants Cruz and Rodriguez. Nationwide's claim is also fraught with uncertainty because of the distinct possibility that Nationwide won't ever have to bring this claim against Cruz and Rodriguez; if plaintiff recovers less than defendants' policy limits, or nothing at all, Nationwide will not have any losses to recoup from the primary tortfeasors.

The second prong of the ripeness analysis requires us to weigh the hardship the parties will suffer if the claim is not promptly reviewed by the court. After careful consideration, we do not believe that Nationwide, or any other party, will suffer undue hardship if we strike Nationwide's cross-claim from the underlying suit. If Nationwide's cross-claim were stricken, Nationwide would be free to file a subrogation suit against the primary tortfeasors to recover any losses Nationwide was required to pay to plaintiff as a result of the alleged tortfeasor-defendants' actions. Theoretically, Nationwide could incorporate salient information gleaned from the current case in the liability and damages portions of their subrogation suit against the primary tortfeasors.

Nor do we believe that Nationwide will incur an immediate financial burden if forced to pursue this claim in a subsequent proceeding. The evidence presented in the current case will likely streamline a subrogation suit, lowering the ultimate cost of litigation; Nationwide might only suffer financial harm because it injected itself into the current dispute before its subrogation rights had vested. Additionally, defendants Cruz and Rodriguez will not likely incur any economic burden if we strike Nationwide's cross-claim. If plaintiff recovers less than defendants' applicable policy limits, or nothing at all, in the current suit, then defendants Cruz and Rodriguez will not have to defend themselves in a subrogation suit because Nationwide will have no losses to recoup. This distinct possibility, coupled with the inevitable confusion of the issues if we permitted Nationwide to pursue its cross-claim concurrently with the underlying tort litigation, leads us to conclude that none of the parties to Nationwide's cross-claim will suffer undue hardship if the claim was stricken from the current suit.

Accordingly, we enter the following order.

## ORDER

And now, January 7, 2011, after oral argument and upon briefs submitted by the parties, defendants' preliminary objections to the new matter cross-claim of defendant Nationwide Insurance Company are sustained and defendant Nationwide's cross-claim is hereby stricken.