J-A33026-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANITA RICHARDSON, AS ASSIGNEE OF CHESTNUT HILL HOSPITAL AND HEALTH SYSTEM | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : : | |
| v. | : : | |
| JOBY KOLSUN, D.O. | : : | |
| Appellant | : | No. 261 EDA 2014 |

Appeal from the Judgment Entered December 11, 2013
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s):  No. 005041 Jan. Term 2011

BEFORE:  LAZARUS, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 09, 2015**

Joby Kolsun, D.O. (Kolsun) appeals from the judgment entered against him and in favor of Anita Richardson, as assignee of Chestnut Hill Hospital and Health System (Chestnut Hill).  Specifically, Kolsun requests that this Court reverse the order which denied his motion for summary judgment.  After careful review, we affirm.

The trial court set forth the following summary of this case.

> On September 16, 2008, [Richardson] in her individual capacity and as Administratrix of the Estate of Nathaniel Summers, Deceased, commenced the underlying wrongful death litigation by filing a complaint against Chestnut Hill Hospital, Richard Shoemaker, M.D., and various other individuals that [Richardson] alleged were agents of Chestnut Hill Hospital.  In her complaint, [Richardson] argued that the decedent died on October 31, 2006 as a result of negligent medical care received in the emergency room at Chestnut Hill Hospital on October 29

---

* Retired Senior Judge assigned to the Superior Court.

and 31, 2006. The decedent was evaluated in the emergency room by [Kolsun] on October 29, 2006. Decedent was also evaluated by Richard Shoemaker, M.D., in the emergency room on October 31, 2006. Although Dr. Kolsun clearly was the emergency room physician who treated [decedent] on October 29, 2006, he was not named as a defendant in the underlying wrongful death litigation. However, the complaint in that action alleged that Dr. Kolsun was an ostensible agent of Chestnut Hill Hospital, such that Chestnut Hill Hospital was liable for the negligent acts or omission of Dr. Kolsun under theories of agency, master-servant, *respondeat superior*, and/or right of control.

During discovery in the wrongful death medical malpractice action, [Richardson] produced an expert report authored by Edward Monico, M.D., an expert in emergency medicine. In his report, Dr. Monico was critical of the care rendered by Dr. Kolsun on October 29th and the care rendered by Dr. Shoemaker on October 31st. [Richardson] also produced an expert report from Marvin Corman, M.D., that was critical of various other agents of Chestnut Hill Hospital who provided care to the decedent. [Richardson's] expert, Dr. Corman, aside from being critical of Dr. Kolsun, was also critical of Dr. Shoemaker for his role in the October 31, 2006 care as well as Nurse Claire Zakrzewski, the emergency room nurse on October 31, 2006, for her electronic record keeping. Further, Dr. Corman was ciritcal of all of the medical providers for not being aware of [decedent's] history of prior small bowel obstruction. Finally, Dr. Corman was critical of the surgeon and surgical resident, Steven Myrick, M.D., and Tania Brice, M.D., who attended to [decedent] on October 31, 2006, for failing to pursue early surgical intervention.

During the underlying trial, [Chestnut Hill Hospital and Richard Shoemaker, M.D.] agreed to pay Richardson a three million dollar settlement. As part of the settlement, 2.1 million dollars was paid by Chestnut Hill Hospital, $400,000.00 was paid by Dr. Shoemaker and $500,000.00 was paid by the Medical Care Availability and Reduction of Error [(MCARE)] Fund. In addition, Chestnut Hill Hospital assigned [Richardson] its right to claim common law indemnification from Dr. Kolsun. Chestnut Hill Hospital's settlement of the underlying matter was a global settlement that settled all claims based on vicarious liability in connection with the underlying wrongful death litigation.

J-A33026-14

Trial Court Opinion, 7/22/2014, at 1-3.

On February 4, 2011, Richardson instituted an action for indemnification against Kolsun. After pleadings were closed, Kolsun moved for summary judgment. The trial court denied that motion on June 3, 2013. On June 18, 2013, at the request of Kolsun, the trial court added language pursuant to 42 Pa.C.S. § 702(b)[1] to the order so that Kolsun could request to file an interlocutory appeal by permission pursuant to Pa.R.A.P. 1311(b). On July 12, 2013, this Court denied Kolsun's petition for permission to appeal. On December 11, 2013, In order to facilitate the entry of a final order such that this issue could be reviewed, the parties agreed to a stipulated judgment in favor of Richardson and against Kolsun for $500,000, the entire amount of coverage available. Kolsun timely filed a notice of appeal. The trial court did not order a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925, but did file an opinion.

On appeal, Kolsun sets forth one issue for our review.

_____

[1] The statute provides:

> When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order.

42 Pa.C.S. § 702(b).

- 3 -

> Whether the [trial] court committed an abuse of discretion and/or an error of law when it denied [Kolsun's] Motion for Summary Judgment which argued there was not a proper indemnity action against [Kolsun] under Pennsylvania law but rather an attempt by [Richardson] to circumvent the statute of limitations after failing to name [Kolsun] as a defendant in the original medical malpractice matter?

Dr. Kolsun's Brief at 6.

"Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." ***Pappas v. Asbel***, 768 A.2d 1089, 1095 (Pa. 2001) (citations omitted).

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action.... Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the [fact-finder]. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Stein v. Magarity***, 102 A.3d 1010, 1013 (Pa. Super. 2014) (quoting ***DeArmitt v. New York Life Ins. Co.***, 73 A.3d 578, 585–86 (Pa. Super. 2013) (citations and quotation marks omitted)).

Kolsun first contends that because Chestnut Hill paid the settlement as part of a direct claim against it, as well as for its vicarious liability with respect to Dr. Shoemaker and other agents, it was not entitled to indemnity as a matter of law. Kolsun's Brief at 31. In other words, Kolsun argues that Chestnut Hill had no right of indemnity to assign where it paid a settlement on behalf of itself and other parties, not just on behalf of Dr. Kolsun.

We set forth principles of Pennsylvania law with respect to vicarious liability and indemnity.

> Our Supreme Court noted the standards for common law indemnity in ***Builders Supply Co. v. McCabe***, 366 Pa. 322, 77 A.2d 368 (1951):
>
>> The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.
>
> ***Id***. at 370 (emphasis removed). The proper inquiry for an indemnity claim is whether the party seeking indemnity had any part in causing the injury. A right of contribution, on the other hand, exists when a joint tortfeasor has discharged the common liability or paid more than his *pro rata* share, and the joint tortfeasor's liability to the injured persons has been extinguished by the settlement.
>
> Indemnity and contribution are available against any defendant, even one the original plaintiff did not sue. An original defendant may pay or settle the claim voluntarily and recover against the person from whom he is entitled to indemnity, provided he has given proper notice and can establish that the settlement was fair and reasonable. The right of contribution

[and indemnity] may be asserted during the original proceeding ... via joinder of the additional defendants, *see* Pa.R.C.P. 2252, or it may be pursued in a separate action by an original defendant who has previously been held liable to the original plaintiff.

*MIIX Ins. Co. v. Epstein*, 937 A.2d 469, 472-73 (Pa. Super. 2007) (some citations and quotations omitted).

Both Kolsun and Richardson acknowledge that there is no Pennsylvania case law directly on point.[2] Richardson posits the question: "Why should the law deprive a principal of its indemnity rights when two agents acted negligently?" Richardson's Brief at 18. To the extent that Kolsun is arguing that where an employer pays on behalf of more than one employee, it could never be entitled to indemnity, that argument simply makes no legal sense. The law is clear that "[w]here an employer is not negligent by his own act, it is well recognized that his liability to the injured party is only secondary to that of the negligent employee. The employer therefore is entitled to indemnity for any payment of damages he is compelled to make from the employee who is primarily liable." *Ragan v. Steen*, 331 A.2d 724, 730 (Pa. Super. 1974).

Here, where the employer may have paid on claims of vicarious liability on behalf of several employees, Kolsun could have tried the case to determine what percentage would be apportioned to each party for whom the employer paid. Rather, Kolsun stipulated that if he was found liable for

---

[2] Furthermore, our review of case law from other states does not reveal any case on point.

indemnification, a judgment for his insurance policy, $500,000, would be entered. Thus, there is no case for apportionment left to try.

Next, Kolsun argues that indemnity is not available to a party that has made a voluntary payment, *ie*. settled, the case. Kolsun's Brief at 19-23. This claim was not raised in Kolsun's motion for summary judgment; as such it may not be raised on appeal. "The Superior Court, as an error-correcting court, may not purport to reverse a trial court's order where the only basis for a finding of error is a claim that the responsible party never gave the trial court an opportunity to consider." ***Harber Philadelphia Ctr. City Office Ltd. v. LPCI Ltd. P'ship***, 764 A.2d 1100, 1105 (Pa. Super. 2000).

Finally, Kolsun argues that permitting Richardson to receive money from Kolsun would amount to a "double recovery" and would unjustly enrich Richardson. Kolsun's Brief at 31-33. Specifically, Kolsun argues that Richardson is receiving a "windfall." ***Id***. at 32. There is an inkling of truth to this argument under the circumstances of this case. However, the law provides that Chestnut Hill can be reimbursed for payments made on behalf of Kolsun and can also assign that cause of action to Richardson. As such, there is no legal basis to overturn it.

Having concluded that the trial court properly denied Kolsun's motion for summary judgment, we affirm the order of the trial court.

Judgment affirmed.

J-A33026-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2015