# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Jeffrey A. Wright | : |
| | :   No. 103 C.D. 2019 |
| v. | : |
| | : |
| Lower Salford Township Municipal | : |
| Police Pension Fund, Board of | : |
| Supervisors of Lower Salford | : |
| Township, and the Trustees of the | : |
| Lower Salford Township Municipal | : |
| Police Pension Fund, | : |
|                 Appellants | : |
| | : |
| Jeffrey A. Wright, | : |
|                 Appellant | : |
| | :   No. 156 C.D. 2019 |
| v. | : |
| | :   Argued: November 12, 2019 |
| Lower Salford Township Municipal | : |
| Police Pension Fund, Lower Salford | : |
| Township Municipal Police Pension | : |
| Fund Trustees, and Lower Salford | : |
| Township Board of Supervisors | : |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: December 20, 2019

These consolidated cross-appeals return to us following two prior remands. _See Wright v. Lower Salford Township Municipal Police Pension Fund_, 136 A.3d 1085 (Pa. Cmwlth. 2016) (_Wright II_); _Wright v. Lower Salford Township_

(Pa. Cmwlth., No. 788 C.D. 2012, filed June 19, 2013) (unreported) (*Wright I*). The "Township Defendants"[1] (No. 203 C.D. 2019) and Jeffery A. Wright (No. 156 C.D. 2019) appeal from the January 10, 2019 order of the Court of Common Pleas of Montgomery County (trial court) denying their motions for post-trial relief. We affirm.

## Background

The facts and procedural history of this matter are summarized as follows. On January 23, 1996, Wright sustained a knee injury while working as a police officer for the Lower Salford Township Police Department. Following knee surgery, Wright returned to duty at various times, sometimes at full-duty capacity and sometimes at light-duty capacity. Despite his efforts to continue working as a patrol sergeant, Wright eventually became unable to perform his job duties. His last day of work was March 12, 2002. At a public meeting on May 16, 2002, the Board voted unanimously to honorably discharge Wright from the police force due to physical disability and inability to perform the essential functions of his job.

In May 2006, Wright filed a two-count complaint in the trial court. In Count I, asserted against the Township Defendants, Wright made a claim for a disability pension under the statute commonly referred to as Act 30 and Ordinance 2003-2 (Ordinance).[2,3] In Count II, Wright asserted a claim for disability insurance

---

[1] The Lower Salford Township Municipal Police Pension Fund, the Lower Salford Township Board of Supervisors (Board), and the Trustees of the Lower Salford Township Municipal Police Pension Fund.

[2] Act of April 17, 2002, P.L. 239. On April 17, 2002, one month before Wright's honorable discharge, the General Assembly amended the Municipal Police Pension Law, Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. §§767-778, commonly known as Act 600. The 2002 **(Footnote continued on next page…)**

2

benefits directly from two of the Township Defendants' insurance carriers, The Standard Insurance Company and Highmark Life Insurance Company (Highmark), and named the Township Defendants as defendants in this count as well. After filing

---

**(continued…)**

amendment, commonly known as Act 30, added a mandatory disability pension for permanent service-connected injuries, as follows:

> In the case of the payment of pensions for permanent injuries incurred in service, the amount and commencement of the payments shall be fixed by regulations of the governing body of the borough, town, township or regional police department and shall be calculated at a rate no less than fifty per centum of the member's salary at the time the disability was incurred, provided that any member who receives benefits for the same injuries under the Social Security Act . . . shall have his disability benefits offset or reduced by the amount of such benefits.

Section 5(e)(1) of Act 600, 53 P.S. §771(e)(1).

[3] On January 6, 2003, the Board amended the Lower Salford Township Code by adopting the Ordinance, which incorporated Act 30's requirements. The Ordinance states:

> In the case of the payment of pensions for permanent injuries incurred on or after April 17, 2002, the amount of the payments shall be calculated at the rate of 50% of the member's salary at the time the disability was incurred, provided that any member who receives benefits for the same injuries under the Social Security Act . . . shall have his or her disability benefits offset or reduced by the amount of such benefits. Determination of eligibility of disability benefits shall be based on the eligibility of benefits payable for permanent injuries incurred in service under the Township's long-term disability policy and shall be payable commencing at the later of termination of benefits under the long-term disability policy as a result of attaining the maximum age under the disability policy or upon the officer's attainment of his superannuation retirement date.

Code of the Township of Lower Salford, §29-3(B).

the complaint, Wright entered into a settlement agreement with The Standard Insurance Company and voluntarily dismissed Count II against all defendants on December 1, 2009. This case, as such, proceed solely as to Count I.

After the close of the pleadings, the Township Defendants moved for judgment on the pleadings, which the trial court granted. In doing so, the trial court determined that the Board did not adopt Act 30's provisions until January 2003 when it enacted the Ordinance, well after Wright's honorable discharge. *See supra* notes 2-3. Therefore, the trial court concluded that the Township Defendants were not obligated to pay Wright a disability pension.

On appeal in *Wright I*, we concluded that the trial court erred in interpreting the Ordinance because its plain language states that it applies to "payments of pensions for permanent injuries incurred on or after April 17, 2002." *Id.*, slip op. at 4 (quoting Ordinance). We further concluded that there were disputed factual issues regarding whether and on what date Wright suffered a "permanent injury." Whereas Wright alleged that his injury did not become permanent until May 16, 2002, the date of his honorable discharge, the Township Defendants asserted that, irrespective of the extent of his injuries, Wright's last day of work was March 12, 2012. Having made these determinations, this Court reversed the trial court's order, reinstated Wright's complaint, and remanded for further proceedings.

Following the remand in *Wright I*, the trial court determined that Wright incurred a permanent injury on January 23, 1996, the date on which he was first injured while trying to arrest a suspect. Because Wright sustained a permanent injury prior to the effective date of the Ordinance, April 17, 2002, the trial court concluded that Wright was ineligible to receive a disability pension.

4

On appeal in *Wright II*, this Court reviewed the uncontradicted evidence of record and concluded, as a matter of law, that the Board's May 16, 2002 motion to terminate Wright's employment "with an honorable discharge based on [his] inability to perform duties due to a physical disability . . . constituted an official, administrative 'adjudication' of Wright's physical disability." 136 A.3d at 1092. Relying on section 2 of the Police Tenure Act,[4] and case law construing that provision, we determined:

> [T]he Board's May 16, 2002 motion had the practical effect of adjudicating Wright as permanently disabled and honorably discharged him for that reason. In other words, the Board's May 16, 2002 motion determined that Wright was physically unable to perform his job as a police officer and that his disability was permanent, rendering him unfit to serve as a police officer in any capacity [as of that date].
>
> Therefore, we conclude that the trial court erred in determining that Wright did not incur a "permanent injury" or "permanent disability" on or after the effective date of the Ordinance, April 17, 2002.

*Wright II*, 136 A.3d at 1093.

> This Court then issued the following disposition:
>
> Having determined that Wright qualifies for a disability pension pursuant to Act 30 and the Ordinance, we reverse and remand to the trial court for further proceedings, namely a determination as to whether Wright meets the technical requirements—e.g., years of credited service, filing deadlines, requirements for submission of information, etc.—for benefits under the Township's long-term disability policy, as stated in the Ordinance. *See* Ordinance, §29-3(B) ("Determination of eligibility of

---

[4] This section states that a police officer may only be terminated for, among other reasons, a "physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service . . . ." 53 P.S. §812.

5

disability benefits shall be based on the eligibility of benefits payable for permanent injuries incurred in service under the Township's long-term disability policy . . . .").

*Wright II*, 136 A.3d at 1094.

Following the remand in *Wright II*, the trial court convened a bench trial. The bulk of the evidence consisted of Wright's testimony, the parties' stipulation of facts, and their stipulation that certain exhibits were admissible evidence. On January 16, 2019, the trial court issued a decision, ultimately concluding that Wright satisfied the technical requirements for a disability pension under the Ordinance. In so deciding, the trial court issued the following pertinent findings of fact:

13. Wright's permanent disability occurred on May 16, 2002, the date of his honorable discharge from the police department.

14. [Wright] filed a long-term disability application in April 2002 with the assistance of Mary West, Assistant Township Manager at the time.

\* \* \*

16. That form was returned to the [T]ownship, according to the signature of [Wright], around April 23, 2002.

\* \* \*

18. In June of 2002, Standard Insurance wrote a letter to the Township stating that records were still required to process the application.

\* \* \*

22. An appeal was filed on September 19, 2003, accompanied by the appropriate paperwork, and Standard Insurance denied the claim on November 13, 2003 based on the fact that Standard Insurance was not the effective policy during the date of the injury in 1996.

23. The Township indicated that [it] would file the long-term disability application with the correct insurance company.

24. In February 2004, Mary West reached out to [Wright] to request the completed application portions for Highmark Insurance Company.

25. Mary West submitted the long-term disability application . . . for processing on behalf of Highmark Insurance on October 28, 2014.

26. The application was lost, and resent on March 17, 2005.

27. [Mr.] Broadspire, on behalf on Highmark [], denied the long term disability claim on the basis that the claim must be filed within 120 days after the elimination period or within one year after the 120 days.

28. Other than the filing deadline, Broadspire stated that [Wright] would have been covered under the long-term disability policy.

29. [Wright] settled Count II regarding his claims with Standard Insurance.

[42. Paragraph 3 of the Settlement Agreement specifically provided that [Wright] was not releasing any claims against the [Township Defendants] for the statutory disability pension benefit under Act 600, set forth in Count I of the Complaint.]

\* \* \*

35. Ms. West was unaware of the filing deadlines for long-term disability applications in 2002.

\* \* \*

38. Based on the date of disability, May 16, 2002, the time period for filing a disability pension application with

Highmark expired on or about September 16, 2003 (120 days plus one year).

39. The Highmark [] policy required that claims be filed by filing a satisfactory written proof of loss which included a completed claim statement by [the insured], [e]mployer, treating physician, authorization to obtain records, and other documents that may be reasonably required.

40. [The] Township did not commence the application process to Highmark until sometime after it received the Standard denial letter of November 14, 2003, by forwarding the employees' and physicians' portions of the Highmark application to [] Wright.

41. By the time the Township started a process with the Highmark long-term disability application, it was already well beyond the filing deadlines provided in the Highmark policy.

(Trial court's decision, Findings of Fact (F.F.) Nos. 13-14, 16, 18, 22-29, 35, 38-42.)

Based on these findings, the trial court issued the following relevant conclusions of law:

3. Under the terms of the Settlement Agreement between [Wright] and Standard Insurance Company, Wright has preserved his claim against the [Township Defendants] for the disability pension benefit asserted in Count I of the Complaint.

4. Dismissal of Count II with prejudice was a decision to not pursue claims against the insurers for benefits under the policy. Whether [Wright] was entitled to those benefits such that he would qualify for a disability pension remains a matter for this court.

5. Had a timely application been submitted to [] Highmark [], [Wright] would have been covered by its long-term disability policy.

6. The determination of the insurance company was that all technical requirements, other than the filing deadline,

8

had been met, and but for the lateness of filing, [Wright] would have been covered by the long[-]term disability insurance, and thus entitled to disability benefits under Act 30.

\* \* \*

9. [T]he determination of the insurance company that the filing deadline had not been met is not binding upon this Court's determination regarding eligibility for disability benefits [under the Ordinance].

10. Therefore, the sole determination for this Court following remand is whether the filing deadline requirement ha[d] been met.

11. [Wright] provided a completed claim statement from himself and his physician along with the required authorization requested in April 2002. Thus, had [the Township Defendants] provided [Wright] with the proper paperwork from the proper insurance company, the proof of loss paperwork would have been filed within the filing deadlines.

12. [Wright] met his burden of providing the paperwork within the filing deadline when he submitted the requested information in April of 2002.

13. The failure to have that paperwork timely submitted to Highmark lies solely with [the Township Defendants], who created the very criteria for disability in adopting the [] Ordinance that they failed to comply with.

14. [Wright] has therefore met all of the technical requirements for the disability pension benefit under Act 30 and [the] Ordinance.

(Trial court's decision, Conclusions of Law (COL) Nos. 3-6, 9-14.)

Therefore, the trial court concluded that "Wright is entitled to payment from the [the Township Defendants'] police pension fund of a properly calculated

9

disability pension payment from the time of reaching the superannuation date, at the rate of 50% of salary." (COL No. 15).

After the trial court denied the parties' post-trial motions, the parties filed notices of appeal with this Court, and the trial court directed them to file concise statements of errors complained of on appeal in accordance with Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b).

In their concise statement, the Township Defendants asserted that the trial court erred in failing to comply with this Court's remand order in *Wright II* and decided issues that were not encompassed within the remand order; the trial court's decision contradicted the judicial admissions that Wright alleged in the complaint; the trial court abused its discretion in ruling certain evidence hearsay without objections by counsel; the trial court issued rulings that disregarded and/or were contrary to the parties' stipulations; and the trial court made erroneous factual findings and legal determinations with respect to the legal effect of Wright's voluntary dismissal of Count II of the complaint. (Trial court op. at 7-8.)

In his statement, Wright asserted that the trial court erred in concluding that the disability pension would "commence" when he reaches the "superannuation retirement date," rather than the date on which he was honorably discharged and determined to have suffered a permanent work injury. In this regard, Wright contended that the trial court relied on specific language in the Ordinance that violates and is inconsistent with Act 30. According to Wright, the requirement and restrictions for commencement of the disability benefit, as enunciated in the Ordinance, are not authorized by Act 30 and entirely defeat the purpose of Act 30. (Trial court op. at 8.)

10

Subsequently, the trial court issued a Pa.R.A.P. 1925(a) opinion in support of its decision and denial of the parties' post-trial motions. Notably, in its opinion, the trial court found that at least half of the Township Defendants' assertions of error in their 1925(b) statement were "impossibly vague" and should be deemed "waived." (Trial court op. at 9-10.)

## Discussion

As noted above, this case involves consolidated cross-appeals. We will first address the Township Defendants' appeal at No. 103 C.D. 2019, and then Wright's appeal at 156 C.D. 2019.[5]

## The Township Defendants' Appeal

As a preliminary matter, our case law on waiver vis-à-vis deficiencies and inadequacies in appellate briefs is longstanding and clear.[6]

---

[5] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Swift v. Department of Transportation*, 937 A.2d 1162, 1172 n.5 (Pa. Cmwlth. 2007).

[6] In the past, we have admonished against "long-winded, incoherent accusations of wrongdoing by the trial court," *In re Estate of William Henry Fillhart No. 32-93-0409* (Pa. Cmwlth., No. 2534 C.D. 2015, filed October 12, 2016) (unreported), and have condemned briefs that are nothing more than "a hotchpotch consisting of general rambling discourse rife with invective, innuendo and insult . . . and lacking any citation to authority." *Wicker v. State Civil Service Commission*, 460 A.2d 407, 409 (Pa. Cmwlth. 1983) (internal citation omitted). Repeatedly, this Court has said that "it is not our role to become the appellant's counsel. When a brief is inadequate to present specific issues for review, the court will not consider the merits of the case." *Grosskopf v. Workmen's Compensation Appeal Board (Kuhns Market)*, 657 A.2d 124, 125 (Pa. Cmwlth. 1995). Further, under well-settled law, an appellant's "failure to adequately develop [its] arguments or support [its] bald assertions with sufficient citation to legal authority impedes meaningful judicial review of [its] claims." *Commonwealth v. Rompilla*, 983 A.2d 1207, 1210 (Pa. 2009). As one federal circuit court of appeals put it, appellate court "judges are not like pigs, **(Footnote continued on next page…)**

11

It is difficult to grasp the particulars of the arguments that the Township Defendants make in their brief and the applicability of the legal principles they cite. Consequently, we will address (as best as possible) the contentions of the Township Defendants in accordance with our case law and rules regarding waiver, s*ee supra* note 6, and will provide analysis to the extent to which they are properly preserved and presented to this Court.

As far as we can discern, the Township Defendants contend that the trial court erred when it "made a finding for which there was not an evidentiary basis, i.e., speculating as to what one of the insurance companies would have done if certain events [had] transpired differently." (Br. for Township Defendants at 21.) The

---

**(continued…)**

hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam). In situations like these, and others, this Court has concluded that an argument and/or issue is waived for purposes of appellate review. *See, e.g., Ruiz v. Unemployment Compensation Board of Review*, 911 A.2d 600, 605 n.5 (Pa. Cmwlth. 2006); *Browne v. Commonwealth*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004).

Moreover, it is well-settled that "[u]ndisputed findings of fact are binding on this Court." *West Perry School District v. Pennsylvania Labor Relations Board and West Perry Educational Support Personnel Association, PSEA/NEA*, 752 A.2d 461 (Pa. Cmwlth. 2000); *see Munski v. Unemployment Compensation Board of Review*, 29 A.3d 133, 137 (Pa. Cmwlth. 2011). In *American Rock Mechanics, Inc. v. Workers' Compensation Appeal Board (Bik and Lehigh Concrete Technologies)*, 881 A.2d 54 (Pa. Cmwlth. 2005), this Court concluded that where a party cursorily contests findings of fact, but "does not specify which findings are unsupported by substantial evidence," a challenge to the findings "is waived." *Id.* at 56. Similarly, when an appellant's arguments contradict — or at the very least, assume away — the trial court's factual findings and do nothing more than urge this Court to adopt its position, the appellant has asked this Court to do something that our scope of review precludes us from doing. *See Polinsky v. Department of Transportation*, 569 A.2d 425, 428 & n.2 (Pa. Cmwlth. 1990). Stated otherwise, when an appellant's brief simply narrates facts which are contrary to those found by the trial court, the party has not proven that the trial court abused its discretion or committed legal error. *See Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

12

Township Defendants appear to contest the trial court's findings and conclusions insofar as they determined that Wright made a timely claim with Highmark within the filing deadline of the policy; the Township Defendants were solely responsible for failing to have the application submitted to Highmark in a timely fashion; Wright would have been covered under the Highmark policy had the Township Defendants submitted a timely application; and Wright, having met the technical requirements for coverage under the Township's long-term disability policy, was entitled to disability benefits under the Act 30 and the Ordinance.

According to the Township Defendants, the trial court could not make these determinations because they were based on speculation, exceeded the scope of our remand order in *Wright II*, and violated the "law of the case" doctrine. The Township Defendants further assert that because Wright voluntarily dismissed or discontinued Count II against Highmark and The Standard Insurance Company, and admitted in the averments in that count that the insurance companies denied coverage, the averments constituted judicial admissions that were binding upon the trial court. The Township Defendants also posit that

> [i]t would be a miscarriage of justice for the Township [Defendants] to pay premiums to insurers to insure itself against the risk of injury to its employees, have the insurers independently determine that the employees do[] not qualify for benefits under the respective policies, and then find that the employer must pay for the very risk for which it was insured, particularly where the employee sued the insurers, accepted a cash settlement from one of them, and then voluntarily dismissed *both insurers* [in Count II] as parties to the litigation.

(Br. for Township Defendants at 30) (emphasis made in underline omitted).

In *Wright II*, this Court "remand[ed] to the trial court for further proceedings, namely a determination as to whether Wright [met] the technical

13

requirements—e.g., years of credited service, filing deadlines, requirements for submission of information, etc.—for benefits under the Township's long-term disability policy, as stated in the Ordinance." 136 A.3d at 1094. In pertinent part, the Ordinance states that the "[d]etermination of eligibility of disability benefits shall be based on the eligibility of benefits payable for permanent injuries incurred in service under the Township's long-term disability policy." *Id.*

In our view, the Township Defendants misapprehend the nature of this case, this Court's holdings and remand orders, and the effect of the trial court's most recent decision. To begin, this matter only concerns the issue of whether the Township Defendants can deny Wright a long-term disability benefit based upon Wright's failure to comply with the terms of the Ordinance. We find no error in the trial court's decision to the extent that the trial court concluded that Wright had "met all of the technical requirements for the disability pension benefit under Act 30 and [the] Ordinance" and that, pursuant to the Ordinance, "Wright is entitled to payment from the [the Township Defendants'] police pension fund of a properly calculated disability pension payment." (COL Nos. 14-15). As we read the Township Defendants' brief, they do not really contest or challenge the trial court's decision in these regards. Instead, the major theme that we can extract from their brief is that the Township Defendants believe that they have to pay Wright a disability benefit out of their own pocket because Highmark has already denied the claim. However, this is not necessarily true and we do not construe the trial court's conclusions of law as such.

As both the trial court and the Township Defendants recognize, Wright abandoned Count II against Highmark. There is no dispute that the Township Defendants, as part of their pension fund, secured insurance for long-term disability

14

benefits from Highmark. While Wright is entitled to a long-term disability benefit in theory under the Ordinance, as a practical matter, the issues of whether, how, or in what manner Wright can collect those benefits are different ones altogether. In other words, the issues of whether Wright can obtain payment under the long-term disability benefit from Highmark and, if so, who is ultimately responsible for the payment, are issues that have not been adjudicated by the trial court in this case. To the contrary, that legal dispute is one for Wright, the Township Defendants, and Highmark to resolve independent and irrespective of this case.[7] Most likely, that dispute will involve application of legal theories that are only implicated when Highmark is a party to the suit; theories that are simply not at play in these particular proceedings, e.g., issues such as preclusion, settlement and release, negligence, comparative negligence, and the law surrounding insurance denials and an insured's statutory and common law obligations.[8] Consequently, insofar as the trial court's decision could be construed as mandating that the Township Defendants commence making payments for long-term disability, we do not endorse it. Rather, we read and base our affirmance of the trial court's decision solely on the understanding that the

---

[7] To borrow terminology from civil law, while the trial court's decision in the case may have awarded "judgment" to Wright, he still has to engage in the process necessary to "enforce" that judgment.

[8] *See generally and compare generally Rancosky v. Washington National Insurance Company*, 170 A.3d 364, 377 (Pa. 2017); *Buttermore v. Aliquippa Hospital*, 561 A.2d 733 (Pa. 1989); *Brakeman v. Potomac Insurance Co.*, 371 A.2d 193 (Pa. 1977); *DeJesus v. Liberty Mutual Ins. Co.*, 223 A.2d 849 (Pa. 1966); *In re Condemnation by Mercer Area School District* (Pa. Cmwlth., No. 2269 C.D. 2012, filed March 17, 2014) (unpublished); *Casselbury v. American Food Service*, 30 A.3d 510 (Pa. Super. 2011); *Levitt v. Patrick*, 976 A.2d 581 (Pa. Super. 2009); *MIIX Insurance Co. v. Epstein*, 937 A.2d 469 (Pa. Super. 2007); *Strickler v. Huffine*, 618 A.2d 430 (Pa. Super. 1992); *Perry v. Middle Atlantic Lumbermen Association*, 542 A.2d 81 (Pa. Super. 1988); *Coleman v. Conrad*, 70 Pa. D. & C. 127 (C.C.P. 1950).

Township Defendants, at this point, cannot use the Ordinance or Act 30 as a means by which to deny Wright a long-term disability benefit.

With this being stated, we affirm the trial court's decision and deny the appeal of the Township Defendants.[9]

**Wright's Appeal**

In his appeal, Wright contends that the trial court erred in applying the Ordinance and determining that benefits would commence from the time he reached the superannuation retirement date, rather than the date he was adjudicated permanently disabled. However, given our disposition above, this issue is premature and only comes into the legal picture when, or if, the parties reach an agreement, or there is a judicial ruling obligating a party or parties, to pay long-term disability benefits to Wright. Until then, the issue that Wright raises is an abstract one, based upon a set of circumstances that do not yet exist and may never exist. Because this particular issue is not currently ripe for review, any opinion that we would render with respect to it would be advisory in nature. It is well settled that the courts "do not render decisions in the abstract or offer purely advisory opinions." *Harris v. Rendell*, 982 A.2d 1030, 1035 (Pa. Cmwlth. 2009); *see Crystal Lakes Camp v. Alford*, 923

---

[9] In doing so, we conclude that the entirety of the second issue that the Township Defendants raise in their brief is waived based upon the principles enunciated above. *See* Br. for Township Defendants at 32 (claiming that "the trial court erred by ruling certain evidence as hearsay where written documents which the parties stipulated into evidence unequivocally set forth the same facts contained in the oral testimony ruled hearsay and the court failed to consider or even address the existence of such stipulated facts in its decision"); *id.* at 32-41. Nonetheless, we note that simply because the parties entered a stipulation stating that the exhibits were admissible, this did not affect or otherwise curtail the trial court's authority, as fact-finder, to weigh the evidence and make credibility determinations. *See Commonwealth v. Holtzapfel*, 895 A.2d 1284, 1289 n.2 (Pa. Cmwlth. 2006).

A.2d 482, 489 (Pa. Super. 2007) (declining to address an issue that was posed as a hypothetical question dependent on a non-existent set of future circumstances because "this Court cannot and will not issue an advisory opinion"). Therefore, we decline to address the issue that Wright raises in his appeal, without prejudice to Wright reasserting the issue in another legal proceeding should one arise.

## Conclusion

For the foregoing reasons, we affirm the trial court's order denying the parties' post-trial motions.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jeffrey A. Wright | : | |
| | : | No. 103 C.D. 2019 |
| v. | : | |
| | : | |
| Lower Salford Township Municipal | : | |
| Police Pension Fund, Board of | : | |
| Supervisors of Lower Salford | : | |
| Township, and the Trustees of the | : | |
| Lower Salford Township Municipal | : | |
| Police Pension Fund, | : | |
| Appellants | : | |
| | : | |
| Jeffrey A. Wright, | : | |
| Appellant | : | |
| | : | No. 156 C.D. 2019 |
| v. | : | |
| | : | |
| Lower Salford Township Municipal | : | |
| Police Pension Fund, Lower Salford | : | |
| Township Municipal Police Pension | : | |
| Fund Trustees, and Lower Salford | : | |
| Township Board of Supervisors | : | |

## ***ORDER***

AND NOW, this 20th day of December, 2019, the January 10, 2019 order of the Court of Common Pleas of Montgomery County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge